

**ORDERED in the Southern District of Florida on July 11, 2025.**

**Laurel M. Isicoff, Judge**
**United States Bankruptcy Court**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | |
|---|---|
| IN RE: | CASE NO. 25-11136-LMI |
| SKY GARDENS RESIDENCES, LLC, | CHAPTER 11 |
| Debtor. | |

**ORDER GRANTING DEBTOR'S MOTION FOR THE ENTRY**
**OF ORDER APPROVING FORM OF PURCHASE AND SALE AGREEMENT**

**THIS CAUSE** came before the Court on July 10, 2025, at 2:30 p.m., upon the scheduled hearing (the "Hearing") on the Debtor's *Motion for the Entry of Order Approving Form of Purchase and Sale Agreement* [ECF No. 109] (the "Motion")[1], and the Court, having reviewed the Motion, having heard the presentation of counsel, and being otherwise fully advised in the premises, and for the reasons stated on the record of the Hearing, it is

---

[1] Unless defined in this Order, defined terms shall have the meanings ascribed to such terms in the Motion.

1

**ORDERED** as follows:

1.      The Motion is GRANTED as provided herein.

2.      The proposed form of Purchase and Sale Agreement attached to this Order as **Exhibit "A"** is approved.

3.      The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

###

Submitted by:

Michael D. Seese, Esq.
Seese, P.A.
101 N.E. 3rd Avenue
Suite 1500
Ft. Lauderdale, FL 33301
Telephone No.: (954) 745-5897
mseese@seeselaw.com

Copies to:

Michael D. Seese, Esq., who is directed to serve a copy of this Order upon all non-registered users or registered users who have yet to appear electronically in this case and file a conforming certificate of service.

# EXHIBIT "A"

*Purchase and Sale Agreement*

## AGREEMENT FOR PURCHASE AND SALE

This Agreement for Purchase and Sale ("**Agreement**") is entered into by and between SKY GARDENS RESIDENCES, LLC, a Florida limited liability company, or its assignee (collectively "**Seller**") and _____ ("**Buyer**" and, together with Seller, the **"Parties"**).

### RECITALS:

Seller is the owner of certain vacant real property located in Miami-Dade County, Florida, comprising approximately .86 acres located primarily at **16300 NE 19th Avenue, North Miami Beach, Florida 33162**, Florida, the legal description of which is disclosed on Exhibit "A" attached hereto (the "**Land**").

Seller is the debtor under the Chapter 11 bankruptcy proceeding styled *In re: Sky Gardens Residences, LLC,* Case No. 25-11136-LMI (the "**Bankruptcy Case**"), pending before the United States Bankruptcy Court for the Southern District of Florida (the "**Bankruptcy Court**").

On April 29, 2025, the Seller filed the *Motion for the Entry of Orders (I)) Approving (A) Bid Procedures; (B) Form of Asset Purchase Agreement; (C) Form and Manner of Notice; and (D) Scheduling Final Sale Hearing; and (III) (A) Authorizing the Sale of Debtor's Assets Free and Clear of Claims, Liens, Interests, and Encumbrances; (B) Approving Asset Purchase Agreement; and (C) Granting Any Related Relief* [ECF No. 32] (the "**Sale Motion**"). In accordance with the Sale Motion, the Seller requested authority to sell the Sale Assets free and clear of claims, liens, interests, and encumbrances pursuant to section 363(b) and (f) of the Bankruptcy Code.

On May 13, 2025, the Bankruptcy Court entered the *Order (I) Approving (A) Bid Procedures; and (B) Form and Manner of Sale Notice; and (II) Scheduling Auction and Final Sale Hearing* [ECF No. 51] (the "**Preliminary Sale Order**").

Seller desires to sell to Buyer, and Buyer desires to purchase from Seller, the Sale Assets. on the terms and conditions set forth in this Agreement (the "**Contemplated Transaction**").

This Agreement has been executed by, and is binding on the Purchaser, and shall be binding on the Seller upon acceptance and execution by the Seller (the "**Effective Date**").

### AGREEMENT:

1.    **Sale Assets.**

Subject to all of the terms and conditions of this Agreement, Seller will sell to Buyer, and Buyer will purchase from Seller, the following assets (collectively, the "**Sale Assets**"):

(a)    the Land;

(b)    all easements, rights of way, privileges, licenses, appurtenances and any other rights, privileges and benefits, belonging to Seller that run with Seller's title to, or

1

are related, or appurtenant, to the Land, including, without limitation, all right, title and interest, if any, of Seller in and to any land lying in the bed of any street, road, highway or avenue, open or proposed, in front of or adjoining all or any part of the Land, and any and all strips, gores or right of way, riparian rights and easements (collectively, the "**Property**");

(c) all of Seller's right, title and interest in and to (i) any personal property of every kind and character owned by Seller and located on or used in connection with the Land or the operations thereon, and (ii) all utilities, waste water capacity and related utility rights; and

(d) at Closing (as hereinafter defined), Seller shall assign, to the extent assignable, to Buyer any and all (i) permits, governmental approvals, density rights, and licenses and all other intangible rights of Seller which pertain solely to the Property in Seller's possession, if any; (ii) to the extent in Seller's actual possession or control, copies of all environmental studies and reports, surveys, reports, inspection reports, engineering and architectural plans, including CAD files which pertain solely to the Property, if any; and (iii) to the extent in Seller's actual possession or control, construction plans, drawings and specifications for development of the Property (collectively, the "**Intangible Rights**").  To the best of Seller's knowledge, Seller has already provided copies of all Intangible Rights to Buyer prior to the Effective Date of this Agreement.

For the avoidance of doubt, the Sale Assets shall include the Land, Property, and Intangible Rights.

**2. Excluded Assets**

The Sale Assets shall exclude the following (collectively, the "**Excluded Assets**"):

(a) the Seller's cash on hand;

(b) the Purchase Price;

(c) all tax returns of Seller and working papers related thereto and all rights and claims in and to any refunds or credits, including, without limitation, with respect to any taxes paid by Seller in respect of any pre-Closing period;

(d) the Seller's corporate books and records, including, without limitation, books and records (i) relating to any Excluded Assets, (ii) reasonably necessary to prepare tax returns and related filings, and (iii) that the Seller is required by law to retain;

(e) all claims and causes of action, including, without limitation, claims or actions pursuant to Chapter 5 of the Bankruptcy Code, affirmative defenses under sections 544 and 553 of the Bankruptcy Code, any recoveries under such claims and actions, any ay rights, claims, and causes of action relating to any Excluded Assets;

(f)      all insurance policies of the Seller in effect as of the Closing Date, and all claims to insurance proceeds thereunder, but only to the extent such proceeds relate to any Excluded Assets;

(g)      all licenses and permits that are not transferrable to Purchaser;

(h)      all of Seller's capital stock or other equity or membership interests;

(i)      all rights to object to any claims, including, without limitation, any scheduled claims or proofs of claim filed in the Case; and

(j)      any causes of actions against any third parties, including, without limitation, actions against any creditor, secured or otherwise, of the Seller.

**3.      Purchase Price and Deposit.**

(a)      Seller agrees to sell the Sale Assets to Buyer for an amount equal to $_____[AMOUNT]_____ (the "**Purchase Price**"). At the Closing (as hereinafter defined), Buyer will pay to Seller, by wire transfer of funds, the Purchase Price, less the Deposit (as hereinafter defined), and as further adjusted for prorations and adjustments as set forth in this Agreement.

(b)      The Buyer has deposited the amount of $ [AMOUNT], representing ten percent (10%) of the Purchase Price (the "**Deposit**") with Fidelity National Title Insurance Company ("**Escrow Agent**"). The Deposit shall be non-refundable as of the Effective Date, and the disposition of the Deposit shall be in accordance with the terms and conditions of this Agreement. Upon the Escrow Agent's receipt of any part of the Deposit, the Escrow Agent shall deliver written notice thereof to Buyer and Seller and shall place such cash portion of the Deposit in a non-interest-bearing account.

**4.      Title.**

(a)      Within two (2) business days after the Effective Date, Buyer shall order, at Buyer's sole expense, (i) a municipal tax, lien and open permit search for the Property ("**Lien Search**"); (ii) cause Fidelity National Title Insurance Company through its agent Alex D. Sirulnik, P.A. ("**Title Company**") to deliver to Buyer a standard owner's preliminary title commitment ("**Title Commitment**") which shall describe the Land; and (iii) obtain a survey of the Land ("**Survey**"). During the period commencing on the Effective Date and terminating 5 days prior to the Closing Date, Buyer shall review the Title Commitment (the "**Title Investigation Period**").

(b)      Buyer shall have until the expiration of the Title Investigation Period within which to examine the Lien Search, the Survey and the Title Commitment and make its written objections ("**Title Objections**") to any matters, requirements and/or exceptions contained in the Lien Search, the Survey and/or the Title Commitment, which are not caused by Buyer and which are unacceptable to Buyer, in its reasonable discretion, by providing written notice to Seller setting forth the Title Objections ("**Objection Letter**"). If the Buyer fails to provide the Objection Letter to Seller prior to the termination of the Title Investigation Period, then, for all purposes of this Agreement, Buyer shall be deemed to have accepted title in the condition described in the Lien

3

Search, the Survey and Title Commitment. Any title exceptions affecting the Property as of the Effective Date of the Lien Search and the Title Commitment which are not objected to within such time period shall be deemed to be acceptable to Buyer and permitted exceptions for all purposes under this Agreement ("**Permitted Exceptions**"). Notwithstanding the foregoing, title matters shown on the Title Commitment which evidence (i) mortgages granted by Seller encumbering Seller's fee interest in the Property; (ii) judgment liens encumbering Seller's fee interest in the Property; or (iii) mechanic's or materialmen's liens encumbering Seller's fee interest in the Property and arising from any work performed or materials furnished for or on behalf of Seller, shall, in each instance, be deemed objected to without any notice by Buyer and are hereby agreed to be cured by Seller at or prior to Closing (which, in the case of a mechanic's or materialmen's lien shall include, at Seller's option, bonding around or insuring-over the mechanic's or materialmen's lien) at or prior to Closing, including, without limitation, by entry of the Final Sale Order.

(c)     If Buyer delivers a timely Objection Letter to Seller, then within two (2) days after receipt by Seller of the Objection Letter ("**Response Period**"), Seller shall deliver written notice to Buyer advising Buyer whether or not Seller will attempt to cure all or any of the Title Objections set forth in such Objection Letter ("**Response Notice**"). Seller's failure to deliver the Response Notice to Buyer within the Response Period shall be conclusively deemed to constitute an election by Seller not to attempt to cure any of the Title Objections. If Seller elects (or is deemed to have elected) not to attempt to cure any Title Objections, then no later than the Closing Date ("**Election Period**"), Buyer shall deliver written notice to Seller ("**Election Notice**") electing to either (i) terminate this Agreement, in which event the parties hereto shall have no further rights or obligations hereunder except for those rights and obligations which specifically survive termination hereunder and the entire Deposit shall be returned to Buyer, or (ii) waive all of the Title Objections which Seller has elected (or is deemed to have elected) not to attempt to cure, in which event such waived Title Objections shall be deemed to be Permitted Exceptions for all purposes under this Agreement. Buyer's failure to deliver the Election Notice within the Election Period shall be conclusively deemed to constitute Buyer's election to waive all of the Title Objections which Seller has elected (or is deemed to have elected) not to attempt to cure, in which event such waived Title Objections shall be deemed to be Permitted Exceptions for all purposes under this Agreement. If Seller elects pursuant to the Response Notice to attempt to cure any Title Objections, then Seller agrees to undertake commercially reasonable efforts, short of litigation (excluding efforts to cure any Title Objections the Bankruptcy Case), to cure such Title Objections on or before the Closing Date ("**Cure Period**"). If Seller is unable to cure the Title Objections on or before the expiration of the Cure Period, then Buyer shall have a seven (7) day Election Period after the expiration of the Cure Period within which to deliver an Election Notice with respect to such uncured Title Objections as set forth above. Buyer's failure to deliver such Election Notice within such renewed Election Period shall be conclusively deemed to constitute Buyer's election to waive all of the Title Objections which Seller has elected (or is deemed to have elected) not to attempt to cure pursuant to clause (ii) above.

**5.     Inspection Period.**

(a)     Seller has already provided to Buyer the items set forth on <u>Exhibit "B"</u>, to the extent such items are in the possession of Seller. All such information has been supplied without representation or warranty. Buyer acknowledges and agrees that any documents, data or

4

information being provided to Buyer under or pursuant to this Agreement by Seller which was not prepared by Seller (the "**Third-Party Reports**") is being provided merely as an accommodation to Buyer and Seller has not and will not make or be deemed to have made any representation or warranty of any kind or nature whatsoever, express or implied, about the Third-Party Reports, or the accuracy, reliability or usefulness of any information contained therein. Buyer further acknowledges and agrees that Buyer shall not be justified in relying on the Third-Party Reports or any information contained therein without independent investigation and verification thereof, and Buyer hereby waives and relinquishes any and all claims, actions or causes of action which Buyer may ever have against Seller with respect to any Third-Party Report or the contents thereof.

(b)     During the term of this Agreement upon not less than 48 hours prior written notice by Buyer to Seller, Buyer and its contractors, consultants, employees, and other representatives may, among any other things, conduct any and all inspections of the Property desired by Buyer. The right of Buyer, or Buyer's agents, to access the Property shall be contingent upon Buyer or Buyer's agents, as applicable, providing evidence of general liability insurance having coverage limits of not less than Two Million Dollars ($2,000,000) naming Seller as an additional insured and otherwise reasonably acceptable to Seller.  Upon written consent of the Seller, Buyer shall have the right to speak with the City of North Miami Beach (the "**City**") with respect to any approvals and entitlements desired by Buyer with respect to the Property. Seller, upon not less than 48 hours prior written notice by Buyer to Seller (which may be by email), further grants to Buyer and its agents, servants, employees, contractors and representatives, a right of entry upon every portion of the Property, from time to time at all reasonable times for the purpose of inspecting the Property. Such inspections may include, but not be limited to, surveying, environmental tests (Phase I only), soil boring testing for geotechnical purposes, wetlands assessments, utilities and site planning studies, radon testing, and marketing and financial feasibility studies. The Buyer shall act promptly to restore the Property to a suitable condition following any work being done by the Buyer or its agents in accordance with the provisions of this Article. Furthermore, the Purchaser shall restore the Property to a grade and condition which shall be generally similar to that which existed prior to such activity.

(c)     Buyer shall indemnify Seller from any loss, cost, expense, or damage actually incurred by Seller as a result of the negligence or misconduct of Buyer and/or any of Buyer's agents, servants, employees, consultants, or contractors in connection with Buyer's inspection rights set forth in subsection (b) and (c) above ("**Buyer's Inspection Rights**"). The indemnification provided herein shall survive any termination or closing under this Agreement; provided, however, Buyer shall have no indemnification obligation or other liability for, or in connection with, any claims arising from (i) conditions existing on, or under, the Land prior to the Effective Date of this Agreement, (ii) the presence, discovery, or disturbance of Hazardous Substances, or (iii) Seller's intentional misconduct or gross negligence relating to Buyer's Inspection Rights.  For the purposes of this Agreement, the term "**Hazardous Substances**" shall have the definition set forth in the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C.'9601 et seq. and the regulations promulgated thereunder (as amended from time to time) and shall include oil and oil waste as those terms are defined in the Clean Water Act, 33 U.S.C. '1251 et seq. and the regulations promulgated thereunder (as amended from time to time), the Resource, Conservation and Recovery Act, 42 U.S.C. '6901 et seq., and any similar laws enacted in effect, each as amended from time to time and shall include any other elements or compounds contained in the list of hazardous substances adopted by the United States

5

Environmental Protection Agency (the "**EPA**") and the list of toxic pollutants designated by Congress or the EPA as defined by any other Federal, State or local statute, law, ordinance, code, rule, regulation, order or decree relating to standards of conduct concerning any toxic or dangerous waste or substance.

6.    **"As-Is/Where-Is" and Free and Clear Conveyance.**  THE TRANSACTION CONTEMPLATED BY THIS AGREEMENT HAS BEEN NEGOTIATED BETWEEN SELLER AND BUYER. THIS AGREEMENT REFLECTS THE MUTUAL AGREEMENT OF SELLER AND BUYER, AND BUYER WILL CONDUCT ITS OWN INDEPENDENT EXAMINATION OF THE SALE ASSETS.  BUYER HAS NOT RELIED UPON AND WILL NOT RELY UPON, EITHER DIRECTLY OR INDIRECTLY, ANY REPRESENTATION OR WARRANTY OF SELLER OR ANY OF SELLER'S AGENTS OR REPRESENTATIVES, AND BUYER HEREBY ACKNOWLEDGES THAT NO SUCH REPRESENTATIONS HAVE BEEN MADE, EXCEPT FOR, IN EACH CASE, ANY REPRESENTATION OR WARRANTY EXPRESSLY SET FORTH IN THIS AGREEMENT OR IN THE CLOSING DOCUMENTS.  SELLER SPECIFICALLY DISCLAIMS, AND NEITHER IT NOR ANY OTHER PERSON IS MAKING, ANY REPRESENTATION, WARRANTY OR ASSURANCE WHATSOEVER TO BUYER AND NO WARRANTIES OR REPRESENTATIONS OF ANY KIND OR CHARACTER, EITHER EXPRESS OR IMPLIED, ARE MADE BY SELLER OR RELIED UPON BY BUYER WITH RESPECT TO THE STATUS OF TITLE TO OR THE MAINTENANCE, REPAIR, CONDITION, DESIGN OR MARKETABILITY OF THE SALE ASSETS, OR ANY PORTION THEREOF, INCLUDING BUT NOT LIMITED TO (a) ANY IMPLIED OR EXPRESS WARRANTY OF MERCHANTABILITY, (b) ANY IMPLIED OR EXPRESS WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE, (c) ANY IMPLIED OR EXPRESS WARRANTY OF CONFORMITY TO MODELS OR SAMPLES OF MATERIALS, (d) ANY RIGHTS OF BUYER UNDER APPROPRIATE STATUTES TO CLAIM DIMINUTION OF CONSIDERATION, (e) ANY CLAIM BY BUYER FOR DAMAGES BECAUSE OF DEFECTS, WHETHER KNOWN OR UNKNOWN, LATENT OR PATENT, WITH RESPECT TO ANY OF THE PROPERTY, (f) THE FINANCIAL CONDITION OR PROSPECTS OF THE SALE ASSETS, AND (g) THE COMPLIANCE OR LACK THEREOF OF THE SALE ASSETS OR THE IMPROVEMENTS WITH GOVERNMENTAL REGULATIONS, IT BEING THE EXPRESS INTENTION OF SELLER AND BUYER THAT, EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT OR IN THE CLOSING DOCUMENTS, THE SALE ASSETS WILL BE CONVEYED AND TRANSFERRED TO BUYER IN ITS PRESENT CONDITION AND STATE OF REPAIR, "AS IS" AND "WHERE IS", WITH ALL FAULTS, AND FREE AND CLEAR OF CLAIMS, LIENS, INTERESTS, AND ENCUMBRANCES UNLESS OTHERWISE PROVIDED HEREIN. BUYER REPRESENTS THAT IT IS A KNOWLEDGEABLE, EXPERIENCED AND SOPHISTICATED BUYER OF REAL ESTATE, AND THAT IT IS RELYING SOLELY ON ITS OWN EXPERTISE AND THAT OF BUYER'S CONSULTANTS IN PURCHASING THE SALE ASSETS.  BUYER ACKNOWLEDGES AND AGREES THAT BUYER SHALL HAVE THE OPPORTUNITY TO CONDUCT SUCH INSPECTIONS, INVESTIGATIONS AND OTHER INDEPENDENT EXAMINATIONS OF THE PROPERTY AND RELATED MATTERS, INCLUDING BUT NOT LIMITED TO THE PHYSICAL AND ENVIRONMENTAL CONDITIONS THEREOF, AND WILL RELY UPON SAME AND NOT UPON ANY STATEMENTS OF SELLER OR OF ANY MEMBER, MANAGER, OFFICER, DIRECTOR, AGENT OR ATTORNEY OF SELLER.  BUYER ACKNOWLEDGES THAT ALL INFORMATION OBTAINED BY BUYER HAS BEEN

OBTAINED FROM A VARIETY OF SOURCES AND SELLER IS NOT TO HAVE REPRESENTED OR WARRANTED THE COMPLETENESS, ADEQUACY, TRUTH OR ACCURACY OF ANY OF THE DUE DILIGENCE ITEMS OR OTHER SUCH INFORMATION HERETOFORE OR HEREAFTER FURNISHED TO BUYER.  UPON CLOSING, BUYER WILL ASSUME THE RISK THAT ADVERSE MATTERS, INCLUDING, BUT NOT LIMITED TO, ADVERSE PHYSICAL AND ENVIRONMENTAL CONDITIONS, MAY NOT HAVE BEEN REVEALED BY BUYER'S INSPECTIONS AND INVESTIGATIONS.  BUYER ACKNOWLEDGES AND AGREES THAT UPON CLOSING, SELLER WILL SELL AND CONVEY TO BUYER, AND BUYER WILL ACCEPT THE SALE ASSETS, "AS IS, WHERE IS," WITH ALL FAULTS.  BUYER FURTHER ACKNOWLEDGES AND AGREES THAT THERE ARE NO ORAL AGREEMENTS, WARRANTIES OR REPRESENTATIONS, COLLATERAL TO OR AFFECTING THE SALE ASSETS, BY SELLER, ANY AGENT OF SELLER OR ANY THIRD PARTY, OTHER THAN THOSE REPRESENTATIONS OR WARRANTIES EXPRESSLY SET FORTH IN THIS AGREEMENT OR IN THE CLOSING DOCUMENTS.  SELLER IS NOT LIABLE OR BOUND IN ANY MANNER BY ANY ORAL OR WRITTEN STATEMENTS, REPRESENTATIONS OR INFORMATION PERTAINING TO THE SALE ASSETS FURNISHED BY ANY REAL ESTATE BROKER, AGENT, EMPLOYEE, SERVANT OR OTHER PERSON, UNLESS THE SAME ARE SPECIFICALLY SET FORTH OR REFERRED TO HEREIN.  BUYER, WITH BUYER'S COUNSEL, HAS FULLY REVIEWED THE DISCLAIMERS AND WAIVERS SET FORTH IN THIS AGREEMENT, AND UNDERSTANDS THE SIGNIFICANCE AND EFFECT THEREOF.  BUYER ACKNOWLEDGES AND AGREES THAT THE DISCLAIMERS AND OTHER AGREEMENTS SET FORTH HEREIN ARE AN INTEGRAL PART OF THIS AGREEMENT, AND THAT SELLER WOULD NOT HAVE AGREED TO SELL THE PROPERTY TO BUYER FOR THE PURCHASE PRICE WITHOUT THE DISCLAIMER AND OTHER AGREEMENTS SET FORTH IN THIS AGREEMENT.  THE TERMS AND CONDITIONS OF THIS SECTION WILL EXPRESSLY SURVIVE THE CLOSING, WILL NOT MERGE WITH THE PROVISIONS OF ANY CLOSING DOCUMENTS AND WILL NOT BE INCORPORATED INTO THE DEED.

      **7.**      **Bankruptcy Requirements.**

(a)      For purposes of this section, the following terms shall have the following meanings:

      (i)      "**Bankruptcy Code**" means the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq.

      (ii)      "**Bankruptcy Laws**" means the Bankruptcy Code, the Bankruptcy Rules, and the local rules and orders of the Bankruptcy Court, all as amended from time to time.

      (iii)      "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure.

      (iv)      "**Claims**" shall have the meaning set forth in Section 101(5) of the Bankruptcy Code.

7

(v)    "**Final Order**" shall mean an order by the Bankruptcy Court as entered on the electronic docket maintained in the Bankruptcy Case that has not been reversed, stayed, modified, or amended, and respecting which the time to appeal, petition for certiorari or seek re-argument, review or rehearing has expired, and as to which no appeal, re-argument, petition for certiorari, review or rehearing is pending, or, if any appeal, re-argument, petition for certiorari, review or rehearing thereof has been denied, the time to take further appeal or to seek certiorari or further rehearing, review or re-argument has expired.

(vi)    "**Sale Hearing**" shall mean the hearing conducted by the Bankruptcy Court to consider approval of the Seller's sale of the Sale Assets to Buyer free and clear of Claims, liens, interests, and encumbrances pursuant to sections 363(b) and (f) of the Bankruptcy Code.

(vii)    "**Sale Order**" shall mean the order entered on the docket by the Bankruptcy Court authorizing the Seller's sale of the Sale Assets to Buyer.

(viii)    "**Final Sale Order**" shall mean the Sale Order that has been entered on the docket of the Bankruptcy Court and which is a Final Order. The Sale Order shall be in a form acceptable to the Buyer and, at a minimum, satisfy the requirements of Section 7 (b) of this Agreement.

(b)    The Buyer's purchase of the Sale Assets from the Seller shall be subject entry of the Final Sale Order, which shall contain the following.

(i)    a finding that notice of the Sale Motion, the Sale Hearing, and the proposed sale of the Sale Assets was good and sufficient under the Bankruptcy Code and Bankruptcy Rules, and that all parties in interest entitled to notice of such matters received such notice and that no further notice is required, including, without limitation, under the Bankruptcy Code and the Bankruptcy Rules;

(ii)    the sale and transfer of the Sale Assets to the Buyer is approved pursuant to Sections 363(b), (f), and (m) of the Bankruptcy Code;

(iii)    a finding that Buyer is not a mere continuation of the Seller, there is no continuity of enterprise between Seller and Buyer, Buyer is not a successor to Seller and the transactions contemplated by this Agreement do not amount to, or otherwise constitute a consolidation, merger or de facto merger of Seller and Buyer;

(iv)    a finding that Buyer has acted in good-faith within the context of and is entitled to the protections of Section 363(m) of the Bankruptcy Code;

(v)    a finding that the Contemplated Transaction is not avoidable pursuant to Section 363(n) of the Bankruptcy Code;

(vi)    all holders of Claims, liens, interests, and encumbrances against the Debtor or property of the Debtor's bankruptcy estate, including, without limitation, the Sale Assets, shall be enjoined from in any way pursuing Buyer or the Sale

8

Assets by suit or otherwise to recover on any liens, Claims, or encumbrances which they may have against Debtor or the Sale Assets as of the Closing Date; and

(vii)    the Sale Assets shall be conveyed to Buyer free and clear of any and all Claims, liens, interests, and encumbrances pursuant to sections 363(b) and (f) of the Bankruptcy Code.

**8.     Closing.**

(a)    Subject to the terms of this Agreement, including without limitation, the satisfaction or waiver by Buyer in writing of the closing conditions set forth in Section 9 below, the purchase and sale of the Sale Assets contemplated by this Agreement ("**Closing**") shall be closed fifteen (15) days following  entry of the Sale Order unless otherwise extended by the prior mutual agreement of Buyer and Seller (the "**Closing Date**").

(b)    The Closing will be held through an escrow closing arrangement or effected via a "mail away" closing (i.e., in which funds are sent via wire transfer and closing documents are delivered via overnight delivery or courier delivery service to the Title Company).

(c)    At Closing, Seller shall pay and be responsible for the amount of any City, County or State transfer taxes, or any other tax, or fee, imposed by law payable in connection with recording the Deed, including, without limitation, any State documentary stamp tax, and the cost of recording any corrective instruments subject, however, to any exemptions applicable to the transfer or conveyance of the Sale Assets under section 1146 of the Bankruptcy Code, as may be provided in the Sale Order. At Closing, Buyer shall pay and be responsible for the costs of the title insurance premium for an owner's policy of title insurance, survey costs, any Escrow Fee charged by Escrow Agent, recordation costs of the Deed (as hereinafter defined), title examination charges and expenses, and the cost of any other due diligence conducted by Buyer. Buyer and Seller each shall pay its own legal fees related to the preparation or enforcement of this Agreement and all documents required to settle the transaction contemplated hereby. All other closing costs shall be allocated according to customs in Dade County, Florida.

**9.     Buyer's Closing Conditions**.  The obligations of Buyer to pay the Purchase Price and to perform Buyer's other obligations at the Closing and under this Agreement are and shall be subject to the satisfaction of each of the following conditions on or prior to the Closing Date:

(a)    At Closing, the Title Company shall deliver a pro forma version of an ALTA Owner's Title Insurance Policy ("**Title Policy**") insuring Buyer's right, title and interest in the Property in the amount of the Purchase Price, and excepting no matters other than the Permitted Exceptions or matters caused by Buyer;

(b)    At Closing, all of the representations and warranties of Seller contained in this Agreement shall be true and correct in all material respects;

(c)    At Closing, there shall be no material adverse change in the physical condition of the Land that has arisen or occurred after the Effective Date; and

(d)     At Closing, all bankruptcy requirements set forth in Section 7 of this Agreement shall have been satisfied.

If any of the foregoing conditions has not been satisfied as of the applicable date set forth above, and Seller is not otherwise in default hereunder (in which event Buyer shall have the right to pursue its rights and remedies in subsections (i) or (ii) below or proceed under the provisions of Section 20(b) below), then Buyer shall, by written notification to the provided, if at all, no later than five (5) business days following the Closing Date, elect, in Buyer's sole discretion between the following: (i) terminate this Agreement by delivering written notice to the Seller, whereupon the Deposit shall be returned to Buyer and the parties shall be released from any further liability or obligation hereunder, except for these rights and obligations which specifically survive termination hereunder; or (ii) waive all unsatisfied conditions precedent and close, on a date selected by Buyer, notwithstanding the non-satisfaction of such condition(s).

**10.     Seller's Closing Conditions.** The obligations of Seller to perform Seller's obligations at the Closing and under this Agreement are and shall be subject to the satisfaction of each of the following conditions on or prior to the Closing Date:

(a)     At Closing, all of the representations and warranties of Buyer contained in this Agreement shall be true and correct in all material respects;

(b)     At Closing, all bankruptcy requirements set forth in Section 7 of this Agreement shall have been satisfied; and

(c)     At Closing, the Buyer shall have paid the Purchase Price in cleared funds, less the Deposit, and as further adjusted for prorations and adjustments as set forth in this Agreement.

**11.     Seller's Deliveries**.  Seller shall deliver to the Closing Agent and Buyer, at least three (3) days prior to the Closing, copies of the following documents ("**Seller's Closing Documents**") (except for item (e) below which will be agreed to prior to Closing), dated as of the Closing Date, the delivery of which shall be a condition to the Buyer's obligation to consummate the purchase and sale:

(a)     Deed.  A special warranty deed ("**Deed**") conveying to the Buyer fee simple title to the Property subject only to the Permitted Exceptions, with the legal description provided in the Title Commitment.

(b)     Affidavit.  A title affidavit to be agreed to during prior to the Closing Date and such other affidavits and certificates, in form and substance reasonably acceptable to the Seller and its counsel, as the Title Company may reasonably require, including certificates necessary to delete standard title insurance exceptions and to protect Buyer against claims that may give rise to any mechanic's, materialman's or other liens against the Property arising by, through or under Seller.

(c)     FIRPTA Affidavit.  A Seller's affidavit under penalty of perjury stating the Seller is not a "foreign person," as defined in Section 1445 of the Internal Revenue Code of 1986 and the U.S. Treasury Regulations thereunder, setting forth Seller's taxpayer identification number, and that Seller intends to file a United States income tax return with respect to the transfer.

10

(d)      General Assignment.  A duly executed general assignment of all Intangible Rights.

(e)      Seller's Certificate.  A duly executed certification that each representation and warranty of the Seller under this Agreement is true and correct in all material respects as of the Closing as if made by the Seller at such time.

(f)      Closing Statement.  As of or prior to the Closing Date, Seller shall deposit with Closing Agent an executed closing statement in a form reasonably approved by Seller and Buyer ("**Closing Statement**").

(g)      Authority.  Such evidence of the power and authority of Seller to consummate the transactions described in this Agreement, as is reasonably required by the Title Company, which shall include entry of the Sale Order.

(h)      Transfer Forms.  Such transfer tax forms as may be required under applicable law as a condition to the recordation of the Deed or as may be required under applicable law in connection with the transfer of the Land.

(i)      Bankruptcy Court Orders.  A certified copy of the Sale Order.

(j)      Other Documents.  Such additional documents or instruments, in form and substance reasonably acceptable to the Seller and Buyer, as may be reasonably required to effectuate the terms, conditions and provisions hereof and to carry out the intent of the parties hereto, or as may be reasonably required by the Title Company, including, without limitation, executed and acknowledged notices regarding the Property that must be given in accordance with local laws or customs in the state and county where the Property is situated.

**12.      Buyer's Deliveries**.  At the Closing, and simultaneously with Seller's delivery of the Closing Documents required in Section 11 above, the Buyer shall deliver to the Closing Agent and Seller, at least three (3) days prior to the Closing, copies of the following documents ("**Buyer's Closing Documents**") (except for item (e) below which will be agreed to prior to Closing), dated as of the Closing Date, the delivery of which shall be a condition to the Seller's obligation to consummate the purchase and sale:

(a)      Purchase Price. Pay by wire transfer of funds, the Purchase Price, adjusted for the prorations, adjustments and other payments provided for in this Agreement;

(b)      Closing Statement (Title Company). Deliver an executed copy of the Closing Statement to the Title Company;

(c)      FIRPTA Affidavit.  A Seller's affidavit under penalty of perjury stating the Seller is not a "foreign person," as defined in Section 1445 of the Internal Revenue Code of 1986 and the U.S. Treasury Regulations thereunder, setting forth Seller's taxpayer identification number, and that Seller intends to file a United States income tax return with respect to the transfer;

(d)      Buyer's Certificate. A duly executed certification that each representation and warranty of the Buyer under this Agreement is true and correct in all material respects as of the Closing as if made by the Buyer at such time;

11

(e)      Closing Statement (Closing Agent).  As of or prior to the Closing Date, Buyer shall deposit with Closing Agent an executed Closing Statement in a form reasonably approved by Seller and Buyer.

(f)      Authority.  Such evidence of the power and authority of Buyer to consummate the transactions described in this Agreement, as is reasonably required by the Title Company, which shall include entry of the Sale Order; and

(g)      Other Documents. Such additional documents or instruments, in form and substance reasonably acceptable to the Seller and Buyer, as may be reasonably required to effectuate the terms, conditions and provisions hereof and to carry out the intent of the parties hereto, or as may be reasonably required by the Title Company, including, without limitation, executed and acknowledged notices regarding the Property that must be given in accordance with local laws or customs in the state and county where the Property is situated.

**13.      Prorations**.  All real property taxes attributable to the year in which the Closing occurs shall be prorated and adjusted as of the Closing Date as an adjustment at the Closing (regardless of whether such taxes and special assessments are then due and payable or delinquent, and taking into consideration the maximum allowable discount) (the "**Prorated Tax Amount**"). If the tax statements for the fiscal year during which the Closing Date occurs are not finally determined, then the assessed value for the year of Closing and the millage rate for the immediately prior fiscal year will be used for the purposes of prorating taxes in order to calculate the Prorated Tax Amount on the Closing Date, with a further adjustment to be made after the Closing Date (i) as soon as such tax figures are finalized; and (ii) if requested by either party prior to December 31 of the year of Closing. All special assessments which may be amortized over a number of years will be prorated as of the Closing Date, with Seller responsible only for the period ending on the day prior to the Closing Date. The provisions of this Section shall survive the Closing.  Except as otherwise provided herein, all prorations provided herein shall be made as of the Closing Date, with Seller being responsible for all such expenses, and entitled to all such income, that accrue prior to the Closing Date, and with Buyer being responsible for all such expenses, and entitled to all such income, that accrue on and after the Closing Date. The provisions of this Section 11 shall survive the Closing.

**14.      Possession**.  Buyer shall be granted full and exclusive possession of the Property as of the Closing, subject only to the Permitted Exceptions.

**15.      Seller's Representations and Warranties**.  Seller represents and warrants to Buyer, with the understanding that each such representation, warranty and covenant is being relied upon by Buyer is true in all material respects as of the date of this Agreement, and shall be true in all material respects on the Closing Date, that:

(a)      Seller has not entered into any agreement to sell or otherwise dispose of its interest in the Property or any part thereof. No person, firm, corporation or other entity has any right or option to acquire the Property, or any part thereof, other than Buyer and Seller.

12

(b)     Subject to entry of the Sale Order, Seller shall be authorized to execute and deliver this Agreement and all documents now or hereafter to be delivered by it pursuant to this Agreement, to perform all obligations arising under this Agreement.

(c)     Other than entry of the Sale Order, to the best of Seller's Knowledge, Seller is not required to obtain any consent, approval or authorization from, or to make any filing with, any person in connection with, or as a condition to, the execution and delivery of this Agreement, the performance by Seller of its obligations under this Agreement or the conveyance of the Property as contemplated by this Agreement, except as required under this Agreement.

(d)     The Property is not subject to any leases, occupancy or use agreements, is free and clear of all tenants, and there are no parties in possession of the Property other than Seller.

(e)     To the best of Seller's Knowledge, all services performed, or materials provided in connection with the Property and the Intangible Rights that have arisen since the filing of the Bankruptcy Case have been paid for or will be paid for on or before Closing.

(f)     There are no condemnation or eminent domain proceedings pending or to Seller's knowledge, contemplated against the Property or any part thereof, and the Seller has received no written notice of the desire of any public authority to take or use the Property or any part thereof.

(g)     There are no pending actions, suits or proceedings, or, to Seller's knowledge, threatened, against or affecting Seller or any part of the Property, except for the Bankruptcy Case and any matter stayed by operation of the automatic stay in effect in the Bankruptcy Case.

(h)     To the best of Seller's Knowledge, there are no agreements, waivers or other arrangements providing for any extension of time with respect to the assessment of any type of tax or deficiency against Seller in respect of the Property, nor to Seller's knowledge, are there any actions, suits, proceedings, investigations or claims for additional taxes and assessments asserted by any taxing authority.

(i)     To the best of Seller's Knowledge, there are no licenses, management, maintenance, operating, service, commission or similar contracts related to the use, ownership or operation of the Property which would be binding upon Buyer after the Closing. Without limiting the generality of the foregoing, except for debts, liabilities and obligations for which provision is herein made for proration or other adjustment at Closing, there will be no debts, liabilities or obligations of Seller with respect to the Property for which Buyer will be responsible after the conveyance and Closing.

(j)     Seller is not, and will not be, a person or entity with whom Buyer is restricted from doing business with under the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001, H.R. 3162, Public Law 107-56 (commonly known as the "**USA Patriot Act**") and Executive Order Number 13224 on Terrorism Financing, effective September 24, 2001 and regulations promulgated pursuant thereto (collectively, "**Anti-Terrorism Laws**"), including without limitation persons and entities named on the Office of Foreign Asset Control Specially Designated Nationals and Blocked Persons List.

13

(k)     Seller is not a "foreign person," as that term is used and defined in the Internal Revenue Code, Section 1445, as amended.

(l)     Seller is not an "employee benefit plan" as defined in Section 3(3) of the Employee Retirement Income Security Act of 1974, as amended ("**ERISA**"), which is subject to Title I of ERISA, or a "plan" as defined in Section 4975(e)(1) of the Code, which is subject to Section 4975 of the Code.  The assets of Seller do not constitute "plan assets" of one or more such plans for purposes of Title I of ERISA or Section 4975 of the Code.  Seller is not a "governmental plan" within the meaning of Section 3(32) of ERISA, and assets of Seller do not constitute plan assets of one or more such plans.  The transactions contemplated hereunder involving Seller are not in violation of state statutes applicable to Seller's regulating investments of and fiduciary obligations with respect to governmental plans.  The performance or discharge of Seller's obligations hereunder shall not contravene any requirements of any applicable provisions of the Code, ERISA or other applicable law.

(m)     Excluding any filings pertaining to the Bankruptcy Case, Seller has not filed (and is not contemplating filing) any bankruptcy action or petition; no such action or petition has been filed against Seller; and, to Seller's knowledge, no such action or petition has been threatened against Seller.

For purposes of this Agreement, "**Seller's Knowledge**" means the actual knowledge of Celal Ozkan, without independent inquiry, the designated responsible party of the Seller. Any and all of the representations and warranties of Seller as contained in this Agreement are made as of the Effective Date and the Closing Date.

**16.     Buyer's Representations and Warranties**.  Buyer represents and warrants to Seller with the understanding that each such representation, warranty and covenant (i) is material and being relied upon by Seller, (ii) is made as an inducement to Seller to enter into this Agreement and consummate the transaction contemplated hereby, (iii) is true in all respects as of the date of this Agreement, and (iv) shall be true in all respect on the Closing Date, that:

(a)     Buyer has the authority to execute and deliver this, Agreement and all documents now or hereafter to be delivered by it pursuant to this Agreement, to perform all obligations arising under this Agreement.

(b)     This Agreement has been duly executed and delivered by Buyer and constitutes a valid, binding and enforceable obligation of Buyer, subject to bankruptcy and other debtor relief laws and principals of equity.

(c)     The Buyer's compliance with or fulfillment of the terms and conditions of this Agreement will not conflict with, or result in a breach of, the terms, conditions or provisions of, or constitute a default under, any contract to which Buyer is a party or by which Buyer is otherwise bound, which conflict, breach or default would have a material adverse effect on Buyer's ability to consummate the transaction contemplated by this Agreement or on the Property.

(d)     Buyer is not, and will not be, a person or entity with whom Seller is restricted from doing business with under the USA Patriot Act and Anti-Terrorism Laws, including without

14

limitation persons and entities named on the Office of Foreign Asset Control Specially Designated Nationals and Blocked Persons List.

(e)    Buyer is not a "foreign person," as that term is used and defined in the Internal Revenue Code Section 1445, as amended.

**17.    Covenants of Seller**.  Seller hereby covenants with the Buyer as follows:

(a)    Seller will not, without the Buyer's prior written consent (which Buyer may not unreasonably withhold, condition, or delay), create or permit to create by its consent any encumbrances on the Sale Assets not in existence as of the Effective Date, unless required by governmental authority or the Bankruptcy Court; provided, however, the Sale Assets shall be conveyed to Buyer free and clear of any and all such interests and/or encumbrances.  For purposes of this provision the term "encumbrances" shall mean any liens, claims, options, mortgages or other encumbrances, encroachments, rights-of-way, easements, covenants, conditions, restrictions, zoning approvals or modifications.

(b)    Prior to Closing, Seller shall provide Buyer with true, correct and complete copies of any written material notice from the City that Seller receives after the Effective Date with respect to any of the Sale Assets, including, without limitation, any notice related to (i) any special assessments or proposed increases in the valuation of the Sale Assets, (ii) any condemnation or eminent domain proceedings affecting the Sale Assets, (iii) any violation of any Hazardous Substances or any zoning, health, fire, safety or other law, regulation or code applicable to and affecting the Sale Assets, or (iv) any moratorium affecting the Sale Assets.

(c)    Seller shall not (i) enter into any lease, or terminate or amend or grant a consent under any lease, in each case without Buyer's prior written consent, which consent may not be unreasonably withheld, conditioned or delayed if requested during the Inspection Period and thereafter such consent may be withheld in Buyer's sole and absolute discretion; or (iii) intentionally take any action which would have the effect of violating any of the representations and warranties of Seller contained in this Agreement in a material manner.

(d)    Seller will use commercially reasonable efforts to observe all governmental requirements affecting the Sale Assets.

(e)    Seller will advise Buyer promptly, upon Seller's discovery of any litigation, arbitration proceeding or administrative hearing that concerns or affects the Sale Assets in any material manner.

(f)    Seller shall maintain the Sale Assets in substantially its condition, as of the Effective Date, and shall not knowingly of intentionally take any action, or omit to take any action, which could or will materially adversely affect the value of the Sale Assets or harm the physical condition of the Sale Assets. Seller will refrain from committing any waste or nuisance upon the Sale Assets.

(g)    Seller will cause the Sale Assets to be maintained and operated consistent with Seller's past practices. Seller will maintain in full force and effect its existing insurance coverage for the Sale Assets.

15

(h)        Seller shall be responsible for, and shall promptly pay, all amounts that relate to the ownership or operation of the Property and that relate to, or arise from, the time period prior to the Closing and after the filing of the Bankruptcy Case, except to the extent credited to Buyer at Closing.

**18.        Real Estate Commissions**.   Buyer and Seller each represent and warrant to the other that no real estate broker was used by the Buyer and/or Seller in connection with the purchase of the Property except for Hilco Real Estate, LLC ("**Seller's Broker**"). Buyer shall be responsible for the commission owed to the Buyer's Broker pursuant to a separate agreement. Seller shall be responsible for the commission owed Seller's Broker pursuant to separate agreement. Such commissions shall only be paid at the time of Closing and shown on the closing statement, provided that the transaction contemplated herein closes and no implied right to a commission shall apply if the transaction does not close. Buyer and Seller agree to indemnify and hold each other harmless from any and all claims for any brokerage fees or similar commissions asserted by brokers or finders claiming by, through or under the indemnifying party, except that Buyer shall not be required to indemnify Seller for any claims made by any broker of Seller, and Seller shall not be required to indemnify Buyer for any claims made by the Buyer's Broker. The provisions of this Section shall survive the Closing.

**19.        Condemnation or Casualty**.

(a)        Condemnation. In the event of the institution against the record owner of the Property of any proceedings, judicial, administrative or otherwise, relating to the taking, or to a proposed taking of any portion of the Property by eminent domain, condemnation or otherwise or if Seller shall receive any notice or knowledge that any agency or entity having the power of eminent domain is contemplating or is seeking the taking or condemnation of the Property, or any part thereof, or any interest therein (which in Buyer's reasonable opinion materially impairs the proposed development of the Property), prior to Closing, or in the event of the taking of any portion of the Property by eminent domain, condemnation or otherwise, prior to Closing, then the Seller shall notify the Buyer promptly and the Buyer shall have the option, in its sole and absolute discretion of either (a) terminating this Agreement, whereupon the Deposit shall be returned to Buyer and the parties shall be relieved from all further liabilities and obligations hereunder; or (b) closing in accordance with the terms of this Agreement, but at Closing the Seller shall assign to the Buyer all of its right, title and interest in and to any net awards that have been or may be made with respect to such eminent domain proceeding or condemnation. Such election must be made by the Buyer by the Closing Date. If Buyer fails to make an election in writing, it shall be deemed to have elected alternative (a).

(b)        Casualty.   If any portion of the Property is destroyed or suffers Material Loss (as defined below), then Seller shall promptly give notice thereof to Buyer and Seller shall demolish and clear the Property of any debris or Hazardous Substances in accordance with all applicable laws (the "**Demolition and Clearing**"). The parties acknowledge and agree that the Closing Date shall be extended until such as the Demolition and Clearing has been completed.

As used herein, the term "**Material Loss**" shall mean (a) any damage or destruction that costs more than $100,000.00 to repair, based on an estimate by a contractor reasonably acceptable to Buyer or (b) a loss of access to the Land.

16

20.    **Default.**

(a)    In the event Buyer fails to close on the Closing Date or fails to deliver the Buyer's Deliveries as set forth in Section 12 then, as Seller's sole and exclusive remedy, the Deposit placed under this Agreement shall be delivered by the Escrow Agent to the Seller, as liquidated and agreed upon damages and thereafter the Buyer shall be relieved from all further obligations under this Agreement and the Seller shall have no further claim against the Buyer for specific performance or for damages by reason of the failure of the Buyer to close this transaction other than the indemnification provision set forth herein. The amount of such liquidated damages has been established by the parties as the amount of the monetary damages Seller will suffer based solely upon a failure by Buyer to purchase the Sale Assets and Seller shall be entitled to recover no other damages from Buyer based solely upon a failure by Buyer to purchase the Sale Assets . By signing this Agreement, the Parties expressly understand and agree to the foregoing provisions relating to liquidated damages.

(b)    In the event (i) of any material default by Seller, which continues for a period of ten (10) days after written notice to cure from the Buyer (except that Seller shall not have a cure period if Seller willfully fails to close); or (ii) any representation or warranty of Seller is materially inaccurate, untrue or incorrect as of the Closing Date, through an act or omission within the control of Seller (as opposed to a change in fact or circumstance not within Seller's control), then in either such case, Seller shall be in default hereunder, and Buyer shall elect, as its sole remedy, either to (A) terminate this Agreement by giving Seller timely written notice of such election prior to or at Closing and recover the Deposit; (B) enforce specific performance to consummate the sale of the Property hereunder or (C) waive said failure or breach and proceed to Closing without any reduction in the Purchase Price.

21.    **Entire Agreement**.  This Agreement constitutes the entire agreement between the Parties with respect to the transaction contemplated herein, and it supersedes all prior understandings or agreements between the Parties.

22.    **Binding Effect**.  This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective permitted successors and assigns.

23.    **Waiver; Modification**.  The failure by the Buyer or Seller to insist upon or enforce any of their rights shall not constitute a waiver thereof, and nothing shall constitute a waiver of the Buyer's and Seller's right to insist upon strict compliance with the terms of this Agreement.  Either of the Parties may waive the benefit of any provision or condition for its benefit which is contained in this Agreement. No oral modification of this Agreement shall be binding upon the Parties and any modification must be in writing and signed by the Parties.

24.    **Headings**.   The paragraph headings as set forth in this Agreement are for convenience or reference only and shall not be deemed to vary the content of this Agreement or limit the provisions or scope of any paragraph herein.

25.    **Notices**.  Any notice, request, demand, instruction or other communication to be given to either party, except where required by the terms of this Agreement to be delivered at the

17

Closing, shall be in writing and shall be sent by e-mail, hand delivery or overnight delivery as follows:

**If to Buyer:**

with a copy to:
(which shall not constitute notice)

**If to Seller:**                                           Sky Gardens Residences, LLC
                                                            3370 NE 190th Street
                                                            Suite 312
                                                            Miami, FL 33180-2406

with a copy to:                                             Seese, P.A.
(which shall not constitute notice)                         101 N.E. 3rd Avenue, Suite 1500
                                                            Fort Lauderdale, FL 33301
                                                            Attn.: Michael D. Seese, Esq.
                                                            E-Mail: mseese@seeselaw.com

Any such notice shall be either (a) sent by overnight delivery using a nationally recognized overnight courier, in which case notice shall be deemed delivered on the date such notice is deposited with such courier, or (b) sent by personal delivery, in which case notice shall be deemed delivered upon receipt or refusal of delivery of such notice.  A party's address may be changed by written notice to the other party; provided, however, that no notice of a change of address shall be effective until actually received by the recipient thereof.  Copies of notices are for informational purposes only, and a failure to give or receive copies of any notice shall not be deemed a failure to give notice.

26.     **Assignment**.  Except as otherwise provided herein, neither of the Parties shall assign this Agreement without the prior written consent of the other party, which consent shall not be unreasonably withheld, conditioned or delayed; provided, however, Buyer may, without Seller's written consent, but upon written notice to Seller, assign its rights under this Agreement (in whole but not in part) to a partnership, limited partnership, limited liability company, joint venture, corporation, or other similar legal entity formed by Buyer, an affiliate, or its principals in which Buyer (or its principals) or its affiliates, has a majority ownership interest and management control. Time of the Essence. Time is of the essence with respect to each provision of this Agreement.  Provided however, if the date for performance is on a Saturday, Sunday or federal holiday, the date for performance shall be extended to the next business day.

27.     **Force Majeure**.  Buyer shall be excused for the period of delay in the performance or pursuit of any obligations hereunder (including, without limitation, the Closing) when such delay is occasioned by a Foree Majeure Event and the time for performance shall be automatically extended for a like period.  If Buyer claims an extension of time or other consequence as a result

18

of Force Majeure Event, then Buyer shall promptly after it has actual knowledge of the event giving rise to such claim of Force Majeure Event, notify Seller thereof, specifying the nature and (to the extent known) the estimated length thereof.  "Force Majeure Event" shall mean a delay occasioned by a cause or causes beyond the control of Buyer.  Such causes shall include, without limitation:  materially adverse weather conditions (such as hurricanes), civil commotion, warlike operations, terrorism, acts of God or the occurrence of any viral event.

28.     **Attorney Fees**.  If this Agreement gives rise to any litigation, arbitration, or other legal proceeding between Buyer and Seller, the prevailing party shall be entitled to recover its actual costs and expenses, including court costs, costs of arbitration, and reasonable attorneys' fees, in addition to any other relief to which they may be entitled.

29.     **No Third Party Beneficiaries**.  Except as otherwise provided in Section 26 of this Agreement, this Agreement is an agreement between Seller and Buyer only and no third parties shall be entitled to assert any rights as third party beneficiaries hereunder.

30.     **Counterpart Execution**.   This Agreement may be executed in two or more counterparts, all of which together shall constitute but one and the same Agreement. To facilitate the execution and delivery hereof, the parties may exchange executed counterparts hereof, or of any amendment hereto, by facsimile or other similar electronic transmission, which transmission shall be deemed delivery of an original executed counterpart by such party.

31.     **Recordation**.  This Agreement or any memorandum, summary, or other evidence hereof may not be recorded in any public records prior to the consummation of the Closing without the express written consent of Seller.

32.     **Merger Provision**.  Except as otherwise expressly provided herein, any and all provisions contained herein shall merge with the Deed and other instruments executed at Closing, shall terminate at Closing and shall not survive Closing.

33.     **Radon Gas**.  In compliance with §404.056, Florida Statutes, Buyer is hereby made aware of the following:

> RADON GAS IS A NATURALLY OCCURRING RADIOACTIVE GAS THAT, WHEN IT HAS ACCUMULATED IN A BUILDING IN SUFFICIENT QUANTITIES, MAY PRESENT HEALTH RISKS TO PERSONS WHO ARE EXPOSED TO IT OVER TIME.  LEVELS OF RADON THAT EXCEED FEDERAL AND STATE GUIDELINES HAVE BEEN FOUND IN BUILDINGS IN FLORIDA. ADDITIONAL INFORMATION REGARDING RADON AND RADON TESTING MAY BE OBTAINED FROM YOUR COUNTY PUBLIC HEALTH UNIT.

34.     **Applicable Law**.

(a)     This Agreement is subject to any applicable Bankruptcy Laws, as well as any order or act of the Bankruptcy Court. This Agreement is being executed and delivered, and is intended to be performed, in the State of Florida, and the laws of the State of Florida govern the validity,

construction, enforcement and interpretation of this Agreement, without regard to, or effect of, any choice or conflict of law principles or rules, unless otherwise specified herein.

(b)      In the event of a dispute hereunder, such dispute shall be brought exclusively in the Bankruptcy Court which shall retain exclusive jurisdiction with respect to the interpretation, performance, and enforcement of this Agreement. By executing this Agreement, the parties consent to the exclusive venue and jurisdiction of the Bankruptcy Court in any action arising out of or in any way related to this Agreement. The parties irrevocably and unconditionally submit to the jurisdiction (both subject matter and personal) of the Bankruptcy Court and irrevocably and unconditionally waive: (i) any objection any party might now or hereafter have to the venue in such court; and (ii) any claim that any action or proceeding brought in such court has been brought in an inconvenient forum.

(c)      **TO THE EXTENT PERMITTED BY APPLICABLE LAW, THE PARTIES HEREBY KNOWINGLY, VOLUNTARILY, AND INTENTIONALLY WAIVE THEIR RESPECTIVE RIGHTS OF TRIAL BY JURY IN RESPECT OF ANY LITIGATION ARISING OUT OF THIS AGREEMENT OR ANY ACTION OF EITHER PARTY HEREUNDER.**

**35.**      **<u>Announcements and Presentations</u>**.  Without the written consent of the other party, neither Seller nor Buyer shall make any public announcement of this Agreement or the transactions contemplated herein until after the Closing Date, except as may be required pursuant to applicable Bankruptcy Law.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the Effective Date.

**<u>BUYER:</u>**

By: _____

Name: _____

Title: _____

**<u>SELLER:</u>**

SKY GARDENS RESIDENCES, LLC,
a Florida limited liability company

By: _____

Name: _____

Title: _____

21

**EXHIBIT "A"**

**LEGAL DESCRIPTION OF LAND**

Attached

**EXHIBIT "B"**

**LIST OF SELLER ITEMS TO UPLOAD TO DROPBOX**

Policy(ies) of title insurance pertaining to the property, including a copy of each recorded document or instrument listed as an exception in the title policy

Most recent ALTA survey(s) of Land

Each covenant, condition, restriction, easement and agreement encumbering the property

UCC statements filed against the Seller or against any operator or manager of the property

All geotechnical and environmental investigation reports, including Phase I or Phase II reports, soils and ground water tests, topographical maps, boring map and logs, asbestos reports, and similar data pertaining to the Property

Demographic, utility and/or traffic studies and information pertaining to the area in which the property is located

All plans, drawings and specifications for the construction of the Property, including site plans, complete set of architectural and engineering as-built drawings (structural, MEP, fire protection), floor plans, etc.

Site plan approvals, building permits, applications, certificates of occupancy and other municipal, county or state licenses or approvals

Certification of zoning

Utility permits, including water, sewer, gas, electric and cable

Utility confirmation letters and coordinating new service

Storm water management plans and reports

Landscaping and irrigation plans and reports

All engineering and investigative reports pertaining to the existing condition of the Property

All required business licenses and permits, and related correspondence with governmental regulatory agencies

23

24

Correspondence with governmental regulatory agencies pertaining to the property's compliance with applicable laws, rules, regulations, ordinances, orders, etc.

Most current real estate tax bills and any special assessments available) and a summary of any pending tax protest

Mortgage loan document

A list of all pending or threatened claims, proceedings or legal actions instituted against Seller and/or the property

A written statement from Seller disclosing any material adverse facts known to exist with respect to the Property

Description of off-site improvements and signalization

24